COMMONWEALTH *vs.* ALAN J. MONICO.

Middlesex.    May 3, 1977. — September 9, 1977.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & LIACOS, JJ.

*Assault,* Defense of others.   *Practice, Criminal,* Charge to jury.   *Evidence,* Presumptions and burden of proof.   *Error,* Whether error harmful.

At a trial for assault and battery on a police officer, it was error for the judge in his charge to limit the justification of the defense of third persons to persons related to the defendant by consanguinity or affinity; however, the error was harmless where it appeared that the defendant had engaged in minor fisticuffs with some men in the presence of his girl friend, that he was subdued by police officers while a crowd viewed the incident but was not under arrest or restrained by any substantial degree of force, and that after one of the officers may have uttered an expletive and given the girl a hard push, the defendant escaped police restraint and rushed toward that officer and committed the crime charged at a time when contact between the officer and the girl had ceased and she was under no threat of harm. [301-304]

COMPLAINT received and sworn to in the Third District Court of Eastern Middlesex on June 28, 1975.

On appeal to the Superior Court, the case was tried before *Scola,* J., a District Court judge sitting under statutory authority.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Arnold R. Rosenfeld* for the defendant.

*Sheila Ryan,* Legal Assistant to the District Attorney, for the Commonwealth.

LIACOS, J.    The defendant is appealing pursuant to G. L. c. 278, §§ 33A-33G, his conviction by a jury in the Superior Court on a complaint charging him with assault and battery on a police officer. G. L. c. 265, § 13D. After the jury's verdict[1] he was sentenced to a term of ninety days in a house of correction, with the sentence suspended. We transferred the case here from the Appeals Court on our own motion.

The only issue raised by the defendant concerns the propriety of the trial judge's instructions in defining the circumstances in which the action of the defendant in ostensible defense of another might serve as a justification for the offense and thus relieve the defendant of criminal liability. The defendant argues that the charge was in error; the Commonwealth argues to the contrary and states that, in any event, the defendant was not entitled to such a charge on the state of the evidence.

Although a defendant is not entitled to a charge on a hypothesis which is not supported by the evidence, *Commonwealth* v. *Costa,* 360 Mass. 177, 184 (1971), it is also true that, if any view of the evidence would provide support for an affirmative defense, a defendant is entitled to such an instruction. *Commonwealth* v. *Vanderpool,* 367 Mass. 743, 745-746 (1975). See *Commonwealth* v. *Martin,*

---

[1] The jury acquitted the defendant on a charge of carrying a dangerous weapon while committing a breach of the peace.

369 Mass. 640 (1976). As such we recount the evidence drawing the inferences most favorable to the defendant. *Commonwealth* v. *Vanderpool, supra.*

The incident culminating in the defendant's arrest began as the defendant and his girl friend, Karen Kenney, entered the defendant's apartment in the New Towncourt housing project in Cambridge. As they entered the courtyard on the evening in question, they were the object of stones thrown by a young child. Nothing further ensued until the couple emerged from the defendant's apartment fifteen to twenty minutes later, at which point the defendant saw the child and unsuccessfully chased after him in apparent retaliation for the earlier incident. Thereafter, the defendant and Kenney entered the defendant's car and saw a group of five men approach the car from the rear. The defendant got out of the car, and then engaged in some minor fisticuffs with a member of the group, whereupon a police officer who happened to be at the scene attempted unsuccessfully to intervene. While the officer was making this attempt, the defendant's assailant obtained a large club, resembling a baseball bat, and tried to attack the defendant with it. This prompted the defendant to get a metal pipe out of the back seat of his car (he apparently kept it there for protection). From this point on the testimony is in conflict.

According to the victim of the assault, Officer George Walker, when he and his partner arrived at the scene in response to a call from the first officer, the defendant moved from the scene of the original confrontation and while waving the pipe over his head proceeded toward the officers. The defendant claimed to have kept the pipe at his side, but all the witnesses agree that he did resist police efforts to take the pipe away and that he was eventually subdued by a group of officers who proceeded to take the pipe away from him.

The defendant was not under arrest at this point. The police, apparently concentrating on defusing what they viewed as a potentially violent, racially-mixed crowd which had gathered to view the incident, did not, so the record

would indicate, use any substantial degree of force to re-
strain the defendant further.

Soon after being disarmed, the defendant claimed he
heard his girl friend scream, then looked up and saw Offi-
cer Walker with his hands "dug in" on the girl's shoulders
and heard him tell her to "[s]crew." On cross-examination
the defendant amplified on this and said that Walker gave
Kenney a forceful "thrust." Kenney corroborated this
view, although she, in conflict with Walker's testimony,
did not admit rushing toward the officers.[2] A further wit-
ness for the defense stated that the extent of physical
contact between Officer Walker and the girl was a strong
"push." Officer Walker did not admit to either shoving
Kenney or uttering the expletive, but did admit that he
positioned his body and arms in such a way so as to re-
strain Kenney from reaching the defendant but not to
exert any force on her. At any rate, on seeing this incident,
the defendant managed to escape police restraint, rushed
toward Walker and came into physical contact with him
in a manner which the defendant does not contest as suffi-
cient to constitute an assault and battery.

This is the sum of the evidence presented at trial. In
preparation for the judge's charge the defendant requested
an instruction, taken virtually verbatim from *Common-
wealth* v. *Martin, supra.* The request was refused by the
judge, and the refusal was excepted to. After the jury be-
gan their deliberations they returned to ask the judge
whether mitigating circumstances could be taken into ac-
count in reaching their verdict. The judge responded, in
part by charging the jury on self-defense, as well as on the
defense of others, as a justification for assault but did so
by limiting the latter defense to those persons related to
the defendant by consanguinity or affinity.[3] Again the

---

[2] The defendant also admitted that he did not see Kenney rush at
Officer Walker. In the view we take this factor is of no import.

[3] "Now, that applies to you and to certain persons who are related
to you either by consanguinity or affinity. In other words, the same
thing. If one of your children is cornered, you may come to his or her
aid. If your wife is cornered, you may come to her aid. But that same

defendant duly excepted. The jury returned to their deliberations and after a further return to indicate a perceived inability to reach a verdict they reached agreement on the verdict of guilty.

The Commonwealth, apparently recognizing the error of the charge under *Martin,* has made various attempts to distinguish that case by arguing that it is limited (1) to prison situations, and (2) to situations involving threats of great bodily harm. However, the express language of *Martin* that the justification for defense of a third party does not stop at the prison gates indicates that *Martin* is not limited in the first respect. See *United States* v. *Grimes,* 413 F.2d 1376 (7th Cir. 1969). In terms of the underlying policy justifying the defense which is to discourage calculated indifference to the plight of another, see *Commonwealth* v. *Martin, supra;* Comments to § 3.05 of the Model Penal Code in Tentative Draft No. 8, 31 (1958); Note, 75 Colum. L. Rev. 914 (1975), the distinction as to the nature of the threatened injury is not tenable. Rather, it is the familiar principle that the reasonableness of the force used in defense must be commensurate with the harm threatened which governs. *Commonwealth* v. *Bush,* 112 Mass. 280 (1873).

The same underlying policies which indicate why the Commonwealth's narrow reading of *Martin* is not supportable do indicate, however, that there is merit to its final argument that the defendant was not entitled to any instruction on the issue at all. Thus, the instructions given,

privilege would not apply to a brother. It might apply to a parent. It definitely applies to children and spouse. But it would not even apply to a brother or sister unless the amount of force being exerted on that person is so great that not only is the person cornered, but the force being used is so severe as to almost constitute deadly force, then you might come to the aid even of a stranger. But under ordinary circumstances, self-defense is only available to a person who is being assaulted and who is cornered and has no avenue of escape or to either his son or daughter or his wife if any of them are in the same situation. But it is not available to a person for the protection of a friend or any other relative unless the force being used on that friend or relative or even a stranger is so severe as to almost constitute deadly force being used upon him."

plainly erroneous under our law, were harmless error.

The *Martin* defense is, as noted, predicated on the social desirability of encouraging people to go to the aid of third parties who are in danger of harm as the result of the unlawful actions of others. At the same time, consistent with the purpose of minimizing the effects of unlawful violent acts, the defense of others does not authorize resort to punitive force. Its applicability is conditioned on the "immediacy of the need to resort to force." Note, 75 Colum. L. Rev. 914, at 931 (1975).[4] As is the case in the area of self-defense, there must be a threat of harm to the person being protected before its invocation as a defense in a criminal case is justified. *Commonwealth* v. *Kendrick,* 351 Mass. 203 (1966).

In this case, drawing every inference favorable to the defendant, we do not believe that the state of the evidence justified the defendant's reliance on the *Martin* defense. At best the jury could have concluded that the defendant looked up and saw Officer Walker with his hands on Kenney uttering an expletive at the same time. More likely, the evidence would suggest that Walker gave Kenney a hard push. While we do not in any way praise or condemn Walker's actions, we cannot conclude on this record that there was further contact between Walker and Kenney or that at the time Monico engaged in contact with Officer Walker any threat of harm was presented to Kenney. If anything, the harm had already taken place and the defendant's actions cannot be viewed as a defense so much as a punitive use of force. This, of course, is unlike *Martin* where the evidence could support the conclusion that the defendant intervened at a time when the harm was still occurring. Neither *Martin* nor the Model Penal Code was meant to sanction the use of punitive or merely retaliatory

---

[4] This policy is consistent with that underlying § 3.05 of the Model Penal Code. Other States have conditioned the applicability of the defense where it is necessary to repel *"imminent use* of unlawful force." Note, 75 Colum. L. Rev. 914, at 931 & n.61 (1975). In the view we take of this case we have no occasion to decide whether that test is also applicable in Massachusetts.

force and, on the state of the evidence, the defendant was not justifiably entitled to claim the *Martin* defense. See *People* v. *Booher*, 18 Cal. App. 3d 331 (1971).

While the Commonwealth has the burden of proving that the defendant did not act in a valid defense of others, the defendant has the burden of producing sufficient evidence to raise the issue. *Commonwealth* v. *Rodriguez*, 370 Mass. 684 (1976). The defendant has not met this burden. It therefore follows that any error in the instructions was harmless beyond a reasonable doubt and that the conviction must be affirmed.

*Judgment affirmed.*