NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

13-P-928                                        Appeals Court


COMMONWEALTH  vs.  CHRISTINE M. PACKER.


No. 13-P-928.

Hampden.     May 6, 2014. - October 27, 2015.

Present:  Berry, Milkey, & Maldonado, JJ.

Assault and Battery.  Parent and Child, Discipline.  Child
    Abuse.  Practice, Criminal, Affirmative defense, Request
    for jury instructions, Instructions to jury, Presumptions
    and burden of proof.


    Complaint received and sworn to in the Westfield Division
of the District Court Department on April 1, 2011.

    The case was tried before Philip A. Contant, J.


    Jessica L. LaClair for the defendant.
    Deborah D. Ahlstrom, Assistant District Attorney, for the
Commonwealth.


    MILKEY, J.  Following a jury trial in the District Court,

the defendant, Christine M. Packer, was convicted of assault and

battery of her fourteen year old stepdaughter (daughter),

pursuant to G. L. c. 265, § 13(A)(a).  The daughter's father was

likewise charged, and there was a joint trial.  Both defendants

requested a jury instruction on the affirmative defense of

parental discipline.  At the conclusion of the evidence, the judge instructed the jury that they could consider excusing the father's actions as reasonable parental discipline, but that they could not do so with regard to the defendant.  The jury found the defendant guilty, while acquitting the father.  On appeal, the defendant argues that this differential treatment constituted reversible error.  Under the particular circumstances presented, we agree.

Background.  The family.  At the time of the incident, the daughter lived with her father, the defendant, and the daughter's eight year old half-sister (born of the father and the defendant).  The father and the defendant were married, and the jury reasonably could have inferred that the couple had been together for at least eight years (the age of the half-sister).[1] The father was never married to the daughter's biological mother, and the daughter never lived with her.  In fact, there was no evidence whatsoever that the daughter's biological mother had any ongoing parenting role in her life.

With the biological mother playing no apparent role in the daughter's life, the daughter viewed the defendant as her "mother" or "mom" (as she repeatedly referred to the defendant

---

[1] In assessing whether the requested instruction was warranted, we view the relevant trial evidence in the light most favorable to the defendant.  See Commonwealth v. Randolph, 438 Mass. 290, 299 (2002).

in her trial testimony).  Despite this, or perhaps because of it, the adolescent daughter's relationship with the defendant was somewhat volatile.  The daughter testified that she simultaneously loved and could not "stand" the defendant.  When the father's counsel tried to get her to acknowledge that she did not consider the defendant as her "mother," the daughter denied this.

The daughter fought with both her father and the defendant from time to time.  She acknowledged that at least some of that conflict was over whether she "lied to them or told the truth."  She also acknowledged multiple instances of her lying to the defendant or others.[2]  The events that gave rise to the assault and battery charges arose in this context.

The incident.  On March 30, 2011, the daughter went into the family's kitchen at approximately 5:30 A.M. to eat breakfast before school.  The defendant was already there, where she was

---

[2] In her testimony, the daughter admitted to lying to the defendant, school officials (Q.:  "You lied to the school officials, correct?"; A.:  "Yes."), and the police (Q.:  "And it's fair to say you didn't tell [the investigating officer] the truth, correct?"; A.:  "Yes.").  In fact, she "admitted to at least being inaccurate on a minimum of five occasions" in the testimony she had given at trial.  The daughter also admitted that in February of 2012 (that is, some ten months after the incident), she wrote the father a letter in which she stated, "When this is all resolved, I hope you'll be able to believe and trust me."  The jury could have inferred from such a statement that the daughter was acknowledging that she had given her parents reason not "to believe and trust" her.  There was ample evidence on which reasonable jurors could conclude that the daughter lied on a persistent basis.

making the daughter a boxed lunch for school. The two had a conversation in which the defendant "very nicely" offered the daughter some fruit that she was cutting up. At one point, the defendant noticed that some cheese she had expected to find in the refrigerator was missing, and she asked the daughter whether she had eaten it. The daughter initially denied that she had done so. However, after being challenged by the defendant about the truthfulness of that denial, the daughter admitted to having eaten the cheese.

According to the daughter's testimony, the defendant proceeded to strike the daughter's right ear with her hand causing it to bleed. In addition, the defendant threw the daughter's cellular telephone across the room. After the daughter went to her bedroom, the defendant entered the bedroom and grabbed and pulled the daughter's hair. The defendant and the father then spoke privately. Although there was no direct testimony about what the two said to each other, the daughter testified that the defendant went to get the father to "settle the dispute." The father proceeded to the daughter's bedroom where -- according to the daughter's testimony -- he twice pretended to punch her in the face and then actually did so.

Later that day, the daughter reported the incident to her ninth grade adjustment counselor at a regularly scheduled meeting. The counselor did not notice any physical marks on the

daughter when she first arrived.  However, after the daughter reported the incident, the counselor carefully examined the daughter's head and was able to observe a swollen lip and cut gum (in the area where the father allegedly "punched" her), and a "red like scratch mark" on the daughter's right ear (where the defendant allegedly struck her).  An investigation and these charges ensued.

The jury instruction.  When the defendant and the father requested a parental discipline instruction, the Commonwealth argued that neither one was entitled to such an instruction.  Specifically, the Commonwealth argued that no reasonable jury could conclude either that the defendant and the father were engaged in disciplining the daughter, or -- even if their actions did amount to discipline -- that they employed only "reasonable" force.  The judge ultimately rejected that argument, and he therefore decided to give a parental discipline instruction for the father, the daughter's legal parent.  He instructed the jury that "[a] parent may use reasonable force to discipline his minor child . . . [but] may not use excessive force as a means of discipline or chastisement."[3]

---

[3] The judge appears to have relied on instruction 3.15 of the Massachusetts Superior Court Criminal Practice Jury Instructions (Mass. Cont. Legal Educ. 1st Supp. 2003), which reads in full as follows:

"PARENTAL DISCIPLINE

Notably, in opposing a parental discipline instruction for both the defendant and the father, the Commonwealth did not differentiate between the two. Indeed, the prosecutor himself earlier in the trial referred to the defendant as "the mother" and used the term "their . . . daughter" in reference to the defendant and the father.[4] Nevertheless, the judge sua sponte decided to treat the defendant differently from the father. He not only denied the defendant's request for the same instruction, but also instructed the jury that "you may consider this principle [of parental discipline] only in the case against [the codefendant father], not in the case against [the defendant]." As discussed infra, the judge read Commonwealth v. O'Connor, 407 Mass. 663 (1990) (O'Connor), as commanding this result. The defendant timely objected to this differential treatment.

---

> "A parent, or one acting in the position of a parent and who has assumed the responsibilities of a parent, may use reasonable force to discipline (his/her) minor child. However, a parent may not use excessive force as a means of discipline or chastisement."

We note that in 2013, although the language did not change, this instruction became instruction 5.11.

[4] To the extent that anyone at trial emphasized the defendant's status as a mere stepparent, it was the father's counsel. Relying in part on an allusion to Cinderella, the father's counsel suggested to the jury that the daughter so wanted to escape living with the defendant that she lied about the assaults.

Discussion.  In Commonwealth v. Dorvil, 472 Mass. 1, 2, 12

(2015) (Dorvil), the Supreme Judicial Court expressly recognized

a common-law parental privilege to use reasonable force to

discipline a minor child.  The court laid out the contours of

such a defense as follows:

> "[A] parent or guardian may not be subjected to criminal
> liability for the use of force against a minor child under
> the care and supervision of the parent or guardian,
> provided that (1) the force used against the minor child is
> reasonable; (2) the force is reasonably related to the
> purpose of safeguarding or promoting the welfare of the
> minor, including the prevention or punishment of the
> minor's misconduct; and (3) the force used neither causes,
> nor creates a substantial risk of causing, physical harm
> (beyond fleeting pain or minor, transient marks), gross
> degradation, or severe mental distress."

Id. at 12.  Moreover, "[a]s with other affirmative defenses,

where the parental privilege defense is properly before the

trier of fact, the Commonwealth bears the burden of disproving

at least one prong of the defense beyond a reasonable doubt."

Id. at 13.  On the trial record established in Dorvil, which

included evidence that the defendant there administered a

"smack" to the clothed bottom of a two year old, the court

determined the evidence insufficient as a matter of law to

support the defendant's conviction of assault and battery.  Id.

at 13-15.

In the case before us, the defendant's principal claim is

that the judge erred by instructing the jury that they could

consider a parental discipline defense only as to the father.[5]
The judge denied the defendant the requested instruction solely
because she was not the daughter's legal parent and -- in the
judge's view -- had not sufficiently demonstrated that she was
acting in loco parentis.  See O'Connor, 407 Mass. at 668 (a
nonparent seeking to secure a parental discipline instruction
bears the burden of showing "that he or she stands in loco
parentis to the child . . . [and this in turn requires a showing
that the] person . . . assume[s] all the duties and obligations
of a parent toward the child").

Commenting on O'Connor, the judge stated that being a
stepparent by itself is insufficient to establish that one is
acting in loco parentis and that instead "you'd almost have to
take over for the actual parent."  The judge then highlighted
that here, "the actual parent [presumably, the father] lived in
the same household."  The judge added that "there's no evidence
or basis on which a jury could decide that [the defendant] stood
in local parentus [sic] for this child."

As an initial matter, we consider whether Dorvil left open
the possibility that one acting in loco parentis may raise a

---

[5] There is no merit to the defendant's separate argument
that the evidence of an assault and battery was insufficient as
a matter of law.  Viewing the trial evidence in the light most
favorable to the Commonwealth, see Commonwealth v. Latimore, 378
Mass. 671, 677-678 (1979), there was ample basis upon which
jurors could have concluded that the defendant's hitting the
daughter did not constitute reasonable parental discipline.

parental discipline defense.  The Commonwealth accurately observes that Dorvil states that such a defense is available to a "parent or guardian."  472 Mass. at 12.  However, Dorvil involved a defendant who was the child's legal parent, and it therefore unsurprisingly did not address the rights of someone acting in loco parentis.  To be sure, at the time the Supreme Judicial Court resolved O'Connor, it had not squarely decided that a common-law parental discipline defense existed for anyone.  However, the analytical premise of O'Connor is that one serving in loco parentis has whatever rights a legal parent has.  We see nothing in Dorvil's shorthand reference to "parent or guardian" as intended to undo that premise.

The defendant urges us to adopt a general presumption that stepparents act in loco parentis with regard to their spouses' children.  We decline to do so.  The mere fact that one is married to a legal parent obviously may say little about the nature and extent of the particular parenting role that he or she plays, and that role presumably will vary from household to household.  See O'Connor, 407 Mass. at 668 ("an in loco parentis relationship does not arise merely because someone in a position of stepparent has taken a child into his or her home and cares for the child").

At the same time, we consider it equally self-evident that stepparents are not precluded from playing an in loco parentis

role just because one of the children's legal parents also resides in the same household (as is typically the case). Massachusetts cases have long recognized the pervasiveness of diverse family structures, including the blended family. For example, in Mulhern v. McDavitt, 16 Gray 404, 406 (1860), the Supreme Judicial Court observed that "[i]n this commonwealth it is quite common, upon second marriages, that the wife's children are received into the family as members; and such an arrangement must tend to promote the happiness of the mother and the welfare of the children." The court noted that a stepparent, by receiving a spouse's child into the family, may stand in loco parentis, with the "rights and obligations of a parent," and further noted that "the policy of the law is to encourage an extension of the circle and influence of the domestic fireside, and its presumptions are in favor of the existence of this relation." Ibid.[6] Massachusetts case law firmly recognizes and affirms the reality that many children live in households headed by at least one person who, although performing a critical parenting role, is neither biologically nor legally related to them. See E.N.O. v. L.M.M., 429 Mass. 824, 829, cert. denied,

---

[6] See Roush v. Director of the Div. of Employment Security, 377 Mass. 572, 575-576 (1979), quoting from Coakley's Case, 216 Mass. 71, 74 (1913) ("The voluntary assumption of the obligations of parenthood toward children of a spouse by another marriage is one favored by the law. They may be included under the descriptive word 'family'").

528 U.S. 1005 (1999) (observing, in the context of same-sex couples prior to the recognition of same-sex marriage rights, that a "child may be a member of a nontraditional family in which he is parented by a legal parent and a de facto parent"). Massachusetts statutes, too, recognize the important parental role that stepparents and others can serve.[7]

Against this rich backdrop, the meaning and reach of the dicta in O'Connor come into sharper focus. Although the court stated there that an "[i]ntent to replace a natural parent is never to be lightly inferred," it did not purport to establish a bright line test for resolving whether in loco parentis status applies. O'Connor, 407 Mass. at 668. The defendant in O'Connor was a mere boy friend of the child victim's mother who resided in the same home in an "impermanent living arrangement," and who made no apparent financial contribution to the household. Id. at 664, 668-669. In addition, the child's biological father (in addition to the mother) continued to play an active parenting

---

[7] See, e.g., G. L. c. 209B, § 5, inserted by St. 1983, c. 680, § 1 (rights of "persons acting as parents" to notice and the opportunity to be heard in child custody proceedings); G. L. c. 112, § 12E 1/2, inserted by St. 2012, c. 244, § 10 (mandated notification of "other person[s] having custody or control of a minor child" where the minor is treated for drug or alcohol overdose); G. L. c. 175, § 123 (stepparents are authorized to include stepchildren as insured family members on joint life insurance policies); G. L. c. 118, § 1 (stepparents are included within the definition of parent for the purposes of public assistance); G. L. c. 119, § 21 (stepparents are included within the definition of relatives under the child protection statute).

role in the child's life.  Id. at 669.  It was under these circumstances that the court concluded that "there was no basis on which a jury could decide that the defendant stood in loco parentis to the victim."  Ibid.[8]

The adult-child relationship before us bears little resemblance to the one at issue in O'Connor.  Instead of being an itinerant boy friend or girl friend, the defendant was the child's long-term stepparent who lived full time in the same household.  Moreover, as noted, there was no evidence that the daughter's biological mother played any ongoing role in her life.  Significantly, the daughter viewed the defendant as her "mother," providing robust evidence that the defendant served that role in the family.  Cf. Commonwealth v. Torres, 442 Mass. 554, 568 (2004) (fact that children referred to the defendant as "Daddy" signified their "understanding that the defendant had a parental role in the household").  Although the precise nature of the relationship between the daughter and the defendant was not fully developed at trial, the thrust of the evidence was that the defendant was part of a stable family unit and that she

_____

[8] It was also in this context that the court commented that "[t]he key factors to a threshold showing of in loco parentis status are the intent to take over the position of parent, and the discharge of support and maintenance responsibilities toward the child."  O'Connor, 407 Mass. at 668.  We do not interpret that passage as precluding fact finders from inferring a defendant's "intent to take over the position of parent" from her actions and circumstances.  Nor do we view it as requiring a defendant to prove that she is the family "bread winner."

functionally served as mother and coparent to the daughter.  In
our view, there was a sufficient basis on which the jury could
have concluded that the defendant served an in loco parentis
role.[9]  See O'Connor, 407 Mass. at 668, citing with apparent
approval Gribble v. Gribble, 583 P.2d 64, 66, and see 65-68
(Utah 1978) (where the former stepfather had "lived with the
child from the time he was two months old . . . and . . . the
child . . . had no contact with his biological father," a
hearing was required to determine whether an in loco parentis
relationship existed entitling the stepfather to visitation
rights).[10]  Any doubt as to whether the defendant was playing an

---

[9] The Commonwealth is incorrect in asserting that the
defendant cannot claim in loco parentis status and the
concomitant parental discipline instruction where she did not
take the stand or otherwise put on her own case.  The defendant
was entitled to such an instruction if "any view of the evidence
would provide support for an affirmative defense."  Commonwealth
v. Monico, 373 Mass. 298, 299 (1977).  See Commonwealth v.
Eberle, 81 Mass. App. Ct. 235, 239 (2012) (evidence supporting
an affirmative defense may come entirely from the Commonwealth's
case).  Nor was the defendant precluded from requesting the
instruction by her taking the position that she never in fact
struck the daughter.  See generally Commonwealth v. Callahan,
401 Mass. 627, 636 (1988) (recognizing that it can be a
reasonable defense strategy for counsel to argue only one theory
of defense to the jury and to leave it to the judge to instruct
them on another).

[10] See also Commonwealth v. Clark, 393 Mass. 361, 366
(1984), which concerned a nonparent's potential criminal
liability for failing to obtain medical care for his partner's
child.  The court reversed the dismissal of a criminal
indictment, declining to hold on the undeveloped record that
"only a parent, guardian or person entrusted with legal custody

in loco parentis role should have been left to the jury as fact finder.[11]

The Commonwealth asks us to affirm on the ground that the defendant was not entitled to a parental discipline instruction even if she had been serving in loco parentis. Its contention that there was "no evidence" that the defendant was engaged in discipline is simply at odds with the record. There was evidence that the daughter had a history of conflict with her parents over whether she lied to them, that she had given her parents reason not "to believe and trust" her, that she lied on a persistent basis, and that the defendant in fact struck her in direct response to her having admitted just such a lie. On the record before them, it was open for the jury to find (had they been so instructed) that the defendant's actions were "reasonably related to the purpose of safeguarding or promoting the welfare of the minor, including the prevention or punishment

---

of a child" may have legal duties with regard to a child in the same household.

[11] This could have been accomplished by giving the full model parental discipline instruction available at the time, which referred to a "parent, or one acting in the position of a parent and who has assumed the responsibilities of a parent." See note 3, supra. Presumably, the model instruction will be modified to include the additional teachings of Dorvil.

of the minor's misconduct [here, the daughter's repeated lying]."[12] Dorvil, 472 Mass. at 12.

The Commonwealth principally contends, as it did below, that the defendant struck the daughter out of anger or frustration, and that she therefore cannot claim that she was engaged in discipline at all. However, the Supreme Judicial Court rejected just such an argument in Dorvil, ruling that the viability of a parental discipline defense should not turn on the parent's emotional state. See id. at 13-14 (expressly abrogating dicta in Commonwealth v. Rubeck, 64 Mass. App. Ct. 396, 400-401 [2005]). As the court explained, "It is understandable that parents would be angry at a child whose misbehavior necessitates punishment, and we see no reason why such anger should render otherwise reasonable uses of force impermissible." Dorvil, 472 Mass. at 14.

The Commonwealth additionally argues that the defendant (and the father) should not have been allowed to raise a parental discipline defense because the amount of force they used was excessive as a matter of law. We are not unsympathetic to this argument, especially with regard to the father. See Commonwealth v. Torres, 442 Mass. at 568-569 n.11 (parental

---

[12] The evidence supporting an affirmative defense need not come from a defense witness. See note 9, supra. In assessing whether a jury instruction was warranted, the question is whether "any view of the evidence would provide support for an affirmative defense." Commonwealth v. Monico, 373 Mass. at 299.

discipline instruction was not warranted where the evidence of physical abuse by the parent was so extreme that no reasonable jury could have found it justified). However, viewing the evidence in the light most favorable to the defendant, reasonable jurors could have concluded on this record that she did not "cause[], []or create[] a substantial risk of causing, physical harm (beyond fleeting pain or minor, transient marks), gross degradation, or severe mental distress." Dorvil, 472 Mass. at 12. In this regard, we note that although the jury evidently concluded that the defendant touched the daughter in some fashion, the degree of force she used was hardly definitively established, especially where the corroborating testimony described the resulting injury only as a "scratch."[13] While there is considerable force to the Commonwealth's position that the defendant's behavior should not be viewed as reasonable parental discipline, her actions were not so out of bounds as to exclude such a defense from the jury's consideration.[14] In our

---

[13] Police photographs of the daughter's injuries were never entered in evidence because the Commonwealth failed to turn over the photographs in timely discovery. Our dissenting colleague has not explained how, even if the jurors credited the testimony that the daughter suffered a "scratch," they were precluded as a matter of law from finding that the daughter suffered only a "minor, transient mark[]." Dorvil, 472 Mass. at 12.

[14] In Dorvil, the court concluded, as a matter of law, that a parent cannot be convicted of assault and battery for disciplining a disobedient two year old child by "smack[ing]" her on a clothed bottom. 472 Mass. at 13. Our dissenting

view, the judge did not err in concluding -- after considerable reflection -- that were the defendant acting in loco parentis, it would have been for the jury to weigh her parental discipline defense.[15]

Moreover, even if neither codefendant were entitled to a parental discipline instruction, the judge's differential treatment of the two similarly situated codefendants caused fundamental unfairness to the defendant and independently constituted error.  By treating the defendant and the father differently in a manner not warranted by the evidence, the judge's instructions tended to invite the jury to focus on the defendant as the more culpable party.  Cf. United States v. Brandon, 17 F.3d 409, 453 (1st Cir.), cert. denied sub nom. Granoff v. United States, 513 U.S. 820 (1994) (discussing the difficult choices trial judges face in fashioning jury

---

colleague urges that we hold, again as a matter of law, that disciplining a disobedient fourteen year old by striking her ear cannot constitute reasonable parental discipline.  If we were so to conclude, one would be left to wonder what role, if any, juries are to play in resolving what constitutes reasonable parental discipline.

[15] The trial judge in fact initially expressed his reservations about giving either party such an instruction, stating that he was "not convinced at this point that there's sufficient evidence to raise this disciplinary defense." However, as noted, the judge ultimately provided the father the requested instruction, and he deprived the defendant of the instruction solely because of his view that she could not show in loco parentis status.  Thus, the judge ultimately rejected the Commonwealth's argument that the evidence was insufficient to raise a parental discipline defense.

instructions in multiple defendant cases and the potential dangers of inadvertently "turn[ing] the spotlight" on one defendant).

The defendant's claim of error was fully preserved, and the only remaining question is whether the faulty instructions constituted prejudicial error. The father received the benefit of the instruction, and the jury acquitted him even though the evidence strongly suggests that, if anything, he struck the daughter with more force than did the defendant. Under these circumstances, we "cannot say, with fair assurance . . . that the judgment was not substantially swayed by the error." Commonwealth v. Flebotte, 417 Mass. 348, 353 (1994) (quotation omitted).[16] In any new trial, the judge will be free to revisit whether a parental discipline instruction is warranted on the evidence presented.

Judgment reversed.

Verdict set aside.

---

[16] The defendant also asserts error in the prosecutor's closing. We need not address that claim, which is unlikely to arise in any retrial.

BERRY, J. (dissenting).  The majority opinion, I respectfully submit, misapprehends the law of affirmative defenses in this very important area of parental discipline. One who invokes the affirmative defense of parental discipline has a burden to offer some evidence warranting such an affirmative defense instruction -- either by cross-examination in the direct case or in a defense case.  That was not done here.  Instead, the defense case rested on a theory of fabrication.  See note 4, infra.

The effect of the majority opinion, I believe, may have untoward consequences.  It may be read to mean a parental discipline instruction is warranted in any case involving the hitting of a child for any/every lie, major or minor -- and a host of other childhood infractions.  Under the majority opinion, if a child lies about doing homework, is a parental hit within the majority's realm?  If a child eats candy and is not supposed to do that, is that within the majority realm?  If a child has been untruthful at any time in the past and argued with parents in the past, then may the child be whacked across the face yielding blood, the child's cellular telephone taken and flung across a small room, and the child pursued to her bedroom to have hair pulled, all within the majority realm?  The last answer is "yes," based on this case, and that should be

beyond the pale of any reasonable excuse/justification/parental discipline affirmative defense.

In what appears to me to be a misapprehension of the law of evidence on affirmative defenses, the majority seems to take the position that the simple answer is that all this is just a jury question. See ante at ("On the record before them, it was open for the jury to find [had they been so instructed] that the defendant's actions were 'reasonably related to the purpose of safeguarding or promoting the welfare of the minor, including the prevention or punishment of the minor's misconduct [here, the daughter's repeated lying]'"). However, the majority incorrectly, I think, is merging the "it is a jury question" for jury deliberations and verdict, with the separate and distinct precedent governing the legal responsibility of a judge to make a preliminary legal ruling whether a defendant has adduced sufficient evidence to get an affirmative defense jury instruction. Put another way, the affirmative defense of parental discipline is not just a jury question; it is a judge's legal instruction determination, followed by a judge's yea or nea on whether a jury instruction is warranted on the evidence. To follow the path of the majority, I believe, will yield the result of most defendants claiming, and trial judges wondering, whether every lie (or other child misbehavior) is a predicate for a parental discipline affirmative defense instruction.

The daughter did admit throughout her testimony to eating, and lying about eating, the cheese, which led to the defendant mother's assaults on the day of the encounter. But, contrary to the majority's casting of the record, it is not so on this record that there was evidence that the daughter "lied on a persistent basis." Ante at    .

As basis for this supposed "persistent lying" not proved on the record, the majority strings together without context a bunch of the daughter's minor inaccuracies about the events transpiring on the day of the cheese theft. Thus for example, the majority, without context, writes that "she 'admitted to at least being inaccurate on a minimum of five occasions' in the testimony she had given at trial." Ante at note 2. What the majority fails to say to provide necessary context is that the supposed lies and inaccuracies in the daughter's testimony, including what the majority says were on "five occasions," related to the daughter telling the school official that she had not brought her lunch to school.

Furthermore, contrary to the majority, the daughter testified that she told the police the truth. Thus, there is a similar out-of-context reference, and the record is contrary to what the majority writes in note 2, ante. That is, when confronted by what was fairly standard defense cross-examination about what was and was not in the police report and the

counselor's description of what she remembered being told, <u>the daughter was adamant and did not waver, holding fast that she told the police and the counselor the truth, and did not lie about the cheese incident</u>.  So I do not know from whence in the transcript comes this majority reference to supposedly heavy lying to the police and school officials.  From what I see in black and white in the trial transcript, the daughter was adamant that she told the police and the school counselor the truth about the assault, and the supposed lies to school officials seem to be about lunch brought or not brought to school.

Lastly, I would also note that in other sentence fragments (see <u>ante</u> at    ,    ) there is a misreading of the evidence to support a suggestion that the daughter was a serial liar, thus justifying the beating she received from the mother.  In one such sentence fragment, the majority writes that "[t]here was evidence that the daughter had a history of conflict with her parents over whether she lied to them."  <u>Ante</u> at    -    .  Again, this description is without necessary context.  The actual context is as follows, which shows this reference relates to the daughter living with the grandmother:

<u>Defense counsel</u>:  "Okay.  You currently live with your grandmother?"

<u>Daughter</u>:  "Yes."

Defense counsel:  "And you have since this incident?"

Daughter:  "Yes."

Defense counsel:  "And do you enjoy living with her?"

Daughter:  "Yes."

Defense counsel:  "When you -- before this incident, did you at times wish that you lived with your grandmother?"

Daughter:  "Sometimes."

Defense counsel:  "And sometimes you wished you lived with grandmother because sometimes you fought with your parents?"

Daughter:  "Yes."

Defense counsel:  "And sometimes you fought with your parents about whether you lied to them or told the truth, is that true?"

Prosecutor:  "Objection."

Daughter:  "Yes."[1]

In sum, the evidence -- particularly the daughter's testimony -- does not support the majority position that the assault was justified because of a pattern of regular lies that warranted child discipline.

---

[1] The same flaws appear in the majority sentence fragment, ante at   -   , where the evidence is represented to say that the daughter "had a history of conflict with her parents over whether she lied to them, that she had given her parents reason not 'to believe and trust' her, that she lied on a persistent basis."  This additional reference, like the other majority reference detailed above, is in the context of the daughter leaving the parents' household and going to live with her grandmother.

To be clear further about my position in this dissent, even if the daughter in the past told lies to her parents, what kid has not done that? Do lies in the past, none of which were even probed into at trial or shown to be major or to be of and concerning matters of the child's safety, justify an assault upon the daughter for taking some cheese from a refrigerator and not immediately confessing thereto for a minute or so? I simply do not see the justification for the affirmative defense of parental discipline that the majority would take from this record.

Lastly, as discussed further herein, the majority would make one legal error in giving the father a parental discipline instruction (to which he was not entitled after he punched his daughter in the face) into a different and separate legal error as grounds to reverse the conviction of the mother, who also was not, on the evidence, entitled to a parental discipline affirmative defense instruction.

It is clear that the majority -- having determined that there will be a reversal -- turns its attention to an in loco parentis analysis. I disagree with the majority analysis and its seeking to make this arcane case law the foundation for the parental discipline instruction in future cases -- especially on this extremely thin trial record. I think the Supreme Judicial Court decision in Commonwealth v. Dorvil, 472 Mass. 1, 12 (2015)

(<u>Dorvil</u>), was clear in its extension to a "parent or guardian," and was not intended to rest on in loco parentis. But, perhaps, whether the Supreme Judicial Court wants trial judges to study in loco parentis is a matter for that court to determine should it deem further appellate review warranted -- a path I would urge in this case.

I turn now in this dissent to analysis of those points of divergence from the majority opinion.

As to the defendant mother's appeal (which is the only appeal before this court),[2] there was not sufficient evidence by any measure to support a parental discipline affirmative defense to the mother's assault and battery upon the daughter by a hit across the face that led to bleeding, the grabbing and pulling of the daughter by her hair, or the throwing of the daughter's cellular telephone across the kitchen while the daughter sat in the kitchen -- all of this because the daughter ate some cheese from the refrigerator, and then initially lied, denying she had eaten the cheese.

---

[2] Neither the mother nor the father was, I believe, entitled to a parental discipline instruction. Only the appeal of the convicted defendant mother is before us. The father, who received an unwarranted parental discipline instruction, was acquitted of assault and battery, despite that he punched his daughter in the face, yielding a fat lip. Since he was acquitted, the erroneously given instruction to the benefit of the father is not before us.

1.  The Dorvil reasonableness prerequisite to parental discipline and the three reasonableness prongs.  According to Dorvil, 472 Mass. at 12-13, as a matter of law, parental discipline is an affirmative defense to an alleged assault and battery upon a child.  To this end, Dorvil specifically holds that, before the affirmative defense of parental discipline may be presented to a jury (by instruction charge) or to a judge as trier of fact, the essential prerequisite to the use of parental force in disciplining a child, is reasonableness.  "[T]he force used against the minor child [must be] reasonable," and such force must be "reasonably related to the purpose of safeguarding or promoting the welfare of the minor" (emphasis supplied).  Id. at 12.  Neither of these reasonableness prerequisites is satisfied on the evidence introduced in this case by the defendant mother.  In my opinion, because of that insufficient evidence, the affirmative defense was not applicable, no instruction on parental discipline was warranted, and there was, accordingly, no reversible error.  Hence, I dissent.

This case must be considered in light of the governing Dorvil holding that the affirmative defense of parental discipline only stands and may only be properly brought for consideration before the jury (or judge) as the trier of fact if there is sufficient evidence to warrant the parental discipline. Only then, "[a]s with other affirmative defenses[] [in cases]

where the parental privilege defense is <u>properly before</u> the trier of fact, [does] the Commonwealth [then] bear[] the burden of disproving at least one prong of the defense beyond a reasonable doubt" (emphasis supplied). <u>Dorvil</u>, 472 Mass. at 13. Here, the evidence fails by sufficiency to meet either the first reasonable force prong of <u>Dorvil</u>, or the second reasonable relation prong. See <u>id</u>. at 12. To the contrary in this case, the level of violence inflicted by the defendant mother negates the affirmative defense that the daughter could be subjected to violent assault and battery because of a lie about eating a particular piece of food in the family refrigerator.[3]

Because such an affirmative defense has an insufficient foundation in the evidence and was <u>not</u> established either in the Commonwealth's direct case by cross-examination of the prosecution witnesses or in the defense case (there was no defense case), the mother never met the burden of production to

---

[3] The court in <u>Dorvil</u> also considered a third prong that would focus on the child's offense; here, stealing cheese and lying about eating the cheese. "In applying the [parental discipline defense] framework, each of the three prongs constitutes a question for the trier of fact. In evaluating the reasonableness of the force used, and of the relation of that force to a permissible parental purpose (the first two prongs of the test), the trier of fact may consider, among other factors, the child's 'age,' the 'physical and mental condition of the child,' and '<u>the nature of [the child's] offense</u>'" (emphasis supplied). <u>Dorvil</u>, 472 Mass. at 13, citing Restatement (Second) of Torts § 150 (1965). Because there is a failure of proof on the other two prongs, I will leave aside the question whether a child eating cheese deserves to be assaulted.

be entitled to an affirmative defense jury instruction concerning parental discipline for the assault and battery upon the daughter. See generally Commonwealth v. Cabral, 443 Mass. 171, 179 (2005) (Cabral), quoting from Model Penal Code § 1.12(1), (2) (1985) ("[W]here a defendant asserts an 'affirmative defense,' [the defendant] takes on a burden of production, because the Commonwealth has no burden of disproving an affirmative defense 'unless and until there is evidence supporting such defense'"). As with the general law concerning affirmative defenses and jury instructions to that effect, "[i]f the defense is 'affirmative,' [as is the defense of parental discipline, it is only when] a defendant raises the defense to a charge and the defense is supported by sufficient evidence, [that] the defendant is entitled to have a jury instruction on the defense, and the Commonwealth has the burden of disproving the defense" (emphasis supplied). Cabral, supra at 179-180.[4]

Given this trial record, I believe the judge's original position was on the mark when he stated that he was "not convinced at this point that there's sufficient evidence to

_____

[4] I agree with the Commonwealth's position in its filing pursuant to Mass.R.A.P. 16(l), as amended, 386 Mass. 1247 (1982), submitted after Dorvil was decided, that "[n]o evidence on the issue of parental discipline was adduced at trial. Instead, the defendant relied on the defense of fabrication -- that the victim lied about what happened to her. This was the theme in the opening . . . [and] in cross-examination." (Emphasis supplied.)

raise this disciplinary defense." That was a correct assessment of the evidence, and nothing changed once the evidence closed.

At trial, there was no affirmative defense evidence introduced that the mother engaged in parental discipline so as to justify the assaults and batteries. This alleged affirmative defense was not developed in the cross-examination of the three prosecution trial witnesses -- i.e., the daughter, the school counselor, and the police officer. Nor was any such parental discipline theory presented in a defense case because neither the father nor the mother testified in defense, and the mother did not present any other evidence concerning purportedly justified parental discipline.

To be clear, the importance of this issue is not only whether or not the mother was entitled to a parental discipline affirmative defense instruction. The true reach of the issue extends to the important obligation of a trial judge not to give the instruction when, as here, there is no foundation in the evidence for such a parental discipline affirmative defense instruction. To this end the majority appears to fundamentally misunderstand when an affirmative defense is properly raised by the evidence. Before one can reach the question whether, as the majority writes, "[v]iewing the trial evidence in the light most favorable to the Commonwealth, see Commonwealth v. Latimore, 378 Mass. 671, 677-678 (1979), there was ample basis upon which

jurors could have concluded that the defendant's hitting the daughter did not constitute reasonable parental discipline," ante at note 5, one must first ask whether the evidence presented at trial, viewed in the light most favorable to the defendant, was sufficient to raise the affirmative defense of parental discipline, entitling the defendant to such an instruction.

That is because Dorvil specifically holds that parental discipline is an affirmative defense. Dorvil, 472 Mass. at 13. Thus, to be entitled to a parental discipline affirmative defense instruction, the evidence must sufficiently raise both the first reasonable force prong of Dorvil, and the second reasonable relation prong.

In this respect whether the evidence sufficiently raises the affirmative defense of parental discipline is similar in many ways to whether and when a defendant is entitled to a jury instruction on the affirmative defense of self-defense (and the use of deadly force in self-defense). See Commonwealth v. Toon, 55 Mass. App. Ct. 642, 644-645 (2002) ("Whether an allegedly erroneous instruction on self-defense [and the use of excessive force in self-defense] is prejudicial [or creates a substantial risk of a miscarriage of justice] necessarily involves examining first whether self-defense was raised sufficiently. If not, the defendant received more than he was entitled to . . . . [because

such an instruction is warranted only if] the evidence, together with the reasonable inferences, raises a reasonable doubt as to each of the predicates for the use of deadly force in self-defense").  See also Commonwealth v. Harrington, 379 Mass. 446, 450 (1980) (citation omitted) ("A defendant is [only] entitled to have the jury at his trial instructed on the law relating to self-defense if the evidence, viewed in its light most favorable to him, is sufficient to raise the issue.  There must be evidence warranting at least a reasonable doubt that the defendant:  [1] had reasonable ground to believe and actually did believe that he was in imminent danger of death or serious bodily harm, from which he could save himself only by using deadly force, [2] had availed himself of all proper means to avoid physical combat before resorting to the use of deadly force, and [3] used no more force than was reasonably necessary in all the circumstances of the case").[5]

---

[5] It is interesting to compare the facts in the present case to the facts of Dorvil.  First, in Dorvil, both the defendant father and the child's mother testified at trial.  Dorvil, 472 Mass. 4-5.  Not so here.  Second, in Dorvil, the defendant and the child's mother testified at trial "that [the defendant] administered the spanking because the child disobeyed [the defendant's] direction to go to her mother, and continued playing on the sidewalk near the street."  Id. at 13.  Not so here.  Finally, the factual setting in Dorvil, a young child running around near a bus terminal on a sidewalk close to the street raises safety concerns tied to the child's conduct.  Id. at 5, 13.  Not so here.

Rather than addressing the question whether there was sufficient affirmative defense evidence introduced consistent with the Dorvil prongs and warranting a parental discipline affirmative defense instruction justifying the assault and battery, the majority summarily concludes that "[t]he evidence supporting an affirmative defense need not come from a defense witness," ante at note 12, and relies on snippets to suggest (erroneously I would say) that the record has evidence of persistent lying. First, I do not disagree that an affirmative defense of parental discipline can be developed in the cross-examination of prosecution trial witnesses. See ante at note 9. But here, it was not. And I do not think the snapshot of testimony from the daughter was sufficient to properly put this affirmative defense of parental discipline by instruction before the jury, as trier of fact.

2. The majority in loco parentis pronouncements. Furthermore, given that Dorvil, 472 Mass. at 12, makes perfectly clear that it encompasses a "parent or guardian," I cannot follow the majority's attachment to the twenty-five year old Commonwealth v. O'Connor, 407 Mass. 663, 668 (1990) (O'Connor), and its in loco parentis analysis which, in turn, is tied to financial support. Given the empty trial evidence on this important affirmative defense, I would not (as does the majority) reach out to address in the abstract the parameters of

parental discipline instructions, with the majority focus on an in loco parentis theory.

Nor do I think O'Connor provides a springboard to the rights and obligations of parents within the wake of Dorvil. Further, the "domestic fireside" warmth of the century-old case of Mulhern v. McDavitt, 16 Gray 404, 406 (1860), on which the majority relies in its in loco parentis analysis, is not where the world of family is today.  That arcane in loco parentis analysis does not fit modern life models.  In effect, the majority harkens back to 1860 ancient law, notwithstanding an evidentiary void in this 2013 case.  I decline to follow that path.  And, more significantly, the 2015 Dorvil decision expressly encompasses parents and guardians.[6]  So the majority's focus on in loco parentis is an exploration with no trial record path related to modern decisional law.

In my humble view, given the wholly inadequate trial record, this is not the case in which to move into this fraught area of child discipline.  Furthermore, the nonexistence of any trial evidence leaves me with little assurance that this court should be making pronouncements in the abstract on the arcane doctrine of in loco parentis, in a case where the affirmative defense is not justified in the first place.

---

[6] See, e.g., the editorial in the July 20, 2015, issue of the Massachusetts Lawyers Weekly that fully catches that Dorvil applies to parents and guardians.

3. *The majority failure to consider the insufficiency of the evidence*. Finally, I do not accept, and dissent from, the part of the majority analysis that concludes that "[w]hile there is considerable force to the Commonwealth's position that the defendant's behavior should not be viewed as reasonable parental discipline, her actions were not so out of bounds as to exclude such a defense from the jury's consideration." Ante at    . To the contrary, this beating by a violent slap across the face, delivered with such force that it caused the daughter's ear to bleed, the throwing of a cellular telephone as a projectile, and the pursuit of the daughter into the bedroom to pull her hair were all acts arising out of anger. Such volatile anger-driven acts did not in any way reflect reasonable use of force or proportionality to the child's "major offense" of eating cheese stored in the refrigerator and then denying/lying about that. Hence, no affirmative defense instruction on parental discipline was warranted under Dorvil.

In sum, respectfully, I see the majority as not resolving the fundamental question whether the evidence sufficed for the mother to receive the benefit of this affirmative defense and a parental discipline jury instruction. Furthermore, I am troubled that a conviction is being reversed, with a lot of

writing about in loco parentis and the parental discipline affirmative defense, without any supporting trial evidence.[7]

For all of these reasons, I dissent from the majority's decision reversing the conviction of assault and battery upon the daughter.

---

[7] After summarily concluding that there was sufficient evidence introduced at trial to warrant a parental discipline instruction, the majority ultimately decides that reversal of the conviction of the mother is required because of an "unfairness to the defendant," ante at    , such that a new trial is warranted.  According to the majority, this unfairness inured when the judge, having changed his position, gave the father the unwarranted benefit of a parental discipline instruction while expressly telling the jury not to consider whether the mother may have engaged in parental discipline. But, if the mother had no reasonable tenable basis for the parental discipline instruction anyway, there was no error in depriving her of the instruction.  Where one defendant gets a requested affirmative defense instruction (not warranted by the evidence) and the codefendant does not get the instruction (even though the instruction as to the other codefendant is also not warranted by the evidence) that does not lead to reversal for the defendant correctly denied a jury instruction on an affirmative defense.  The abstract analysis of in loco parentis in the majority as to stepparents becomes a very small part of a very big discussion of other parental discipline legal issues, with which I do not agree.